ST. LOUIS PERPETUAL INSURANCE COMPANY vs. FORD, TO THE USE OF ROGERS.

1. The lien of the attachment against a boat is discharged by giving bond for the discharge of the boat; and after giving such bond, it is error in the court to render judgment ordering the sale of the boat.

2. Although such judgment be erroneous, and an execution thereon irregular, yet the parties to such judgment are not liable to an action of trespass for ordering the sale of the boat under such execution.

3. Such execution can not however be made under the plea of not guilty.

4. The plaintiffs in such execution receiving satisfaction under such execution, would be liable to the owner of the boat who has acquired title subsequent to the discharge of the boat, in an action for money had and received.

## APPEAL from St. Louis Circuit Court.

### *Statement of the Case.*

This was an action of trespass with force and arms, brought by Ford against the Perpetual Insurance Company, for taking from the plaintiff a certain steamboat called the Inda. Plea, not guilty. The parties submitted the issue to the court upon an agreed case in writing, and the court found the issue and gave judgment for the plaintiff. The defendant moved for a new trial, which motion was overruled, and the defendant appealed.

On the 10th January, 1844, the St. Louis Perpetual Insurance Company sued out a warrant in the St. Louis Circuit Court, in due form of law, against the steamboat Inda, for $850, due on a bill of exchange drawn and accepted on behalf of said boat, for money advanced by said Company to said boat, for the purpose of paying the wages of hands on said boat, and for necessary supplies for the boat. Under this warrant, the sheriff seized the boat, and kept it for some time, when it was bonded and discharged from custody under that writ. Afterwards, on the 13th, 14th and 15th of June, 1844, several creditors (about 100) of the steamboat Inda, sued the boat before justices of the peace, by warrants in due form of law, upon claims, being liens of the first class, amounting in the aggregrte to about $3,044. Upon these warrants, the constable seized the boat, and upon return of the warrants, judgments were rendered against the boat, and orders of sale issued; and under the orders of sale, the constable sold the boat to one Webster, who transferred it to Ford, the plaintiff.

Afterwards, on the 25th September, 1844, in said Circuit Court, in the said suit of the Perpetual Insurance Company vs. the steamboat Inda, judgment was rendered against the boat and bondsmen for $730 debt, and $110 17 damages, and $331 56 costs; and an order of sale was made and issued whereby the sheriff was commanded to sell the said steamboat Inda, her tackel, apparel and furniture, to pay said judgment.

Under this order, and with the directions of John B. Camden, President of said Company, the sheriff of St. Louis county, on the 23d of October, 1844, seized said boat, then being in possession of Ford, for the purpose of being sold to satisfy said judgment, and in obedience to said order of court, detained the same in his possession for that purpose only, for several days, and until said

Ford procured the amount of saia judgemnt and costs, 1,292 36, to be paid, and the boat released The money was paid under protest.

## GAMBLE & BATES, *for Appellant.*

1. The steamboat Inda was bound by the seizure under the warrant *ads.* the Perpetual Insurance Company. The bonding of her out of custody of the sheriff, did not discharge the lien on the debt. R. C. of 1845, p. 103, secs. 5 and 10; and session acts 1839, p. 13, sec. 2.

2. The service of the warrant fixed the power of the court over the boat, and the boat was, from that moment, appropriated by law to the payment of the debt, as soon as ascertained; and when the debt was ascertained by judgment, the order of sale was, as a matter of course, prescribed by statute. R. C. of 1835, sec. 10, p. 103; Evans vs. King, 6 Mo. R., 413.

3. The order of sale being issued, the sheriff had no discretion, but was bound to obey it, with or without the prompting of the plaintiff. 1 Mo. R., 134; 4 Mo. R., 1-3; ib. 37-8; 9 Mo. R., 41; 8 Am. Com. Law R., 48-9; 9 Conn. R., 141; 12 Wend. R., 96.

4. Under our boat law, the suit is brought and the final order of sale is made, without any reference to the ownership or possession of the *boat.* And so, the officer in charge of the warrant or the order of sale has nothing to do with the question of ownership or possession. He has noththing to do with *persons,* but is required by the writ to seize a specified *thing* and dispose of it in a particnlar way.

5. The warrants issued by justices of peace, however regular and right, and however regularly prosecuted to judgment and sale, could not operate to divest the Circuit Court of power over the boat, nor take from the plaintiff in that court the benefits of his lien, actually attached and in process of enforcement.

6. But the proceedings on the justices' warrants were irregular and wrong—and under this head:

1st. The boat law prescribes the writ to be issued and the manner of serving it—viz, by actual seizure; and when seized on one writ, it cannot be seized on another.

2nd. If seized and sold by the constable, it must of course be subject to the power of the Circuit Court, and the prior lien actually attached.

7. But, conclusively, the Circuit Court having jurisdiction of the cause, and having issued the order of sale, neither the plaintiff nor the sheriff can be guilty of *trespass* in obeying that order. Ivy vs. Barnhartt, 10 Mo. R., 151; 9 Conn. R., 141.

## R. M. FIELD, *for Appellee.*

I. The plaintiff obtained a perfect title by sale under the warrants, being on liens in the first class. By the act of 1841, in force at the time of the sale, the liens had precedence of all other claims, and had priority among themselves according to the order of enumeration. Session acts 1841, p. 18.

II. The seizure of the boat under the process in favor of the defendants was wrongful:

1st. Because the claim under a bill of exchange drawn by an officer of the boat, was no lien at all.

2nd. At most it could only be a lien in the third class, and could not justify a seizure of the boat after it had been already sold under liens of the first class.

3d. Even were the defendant's lien to be regarded as of the first class, still the boat had been regularly sold under liens of equal dignity, and no previous liens could be asserted against the purchaser.

III. The prior institution of the defendant's suit gave no preference.

1st. The defendant's lien being of an inferior rank, must at all times yield to those under which the plaintiff purchased.

2nd. The lien on the defendant's process was discharged by the giving of the bond. In this respect, the case is plainly distinguishable from an attachment.

*a.* The bond, under the boat law, is conditioned *to pay the debt and costs,* (Rev. Laws, 1835, p. 103)—but in attachment cases the bond is conditioned *to return the property.* Ib., 78.

*b.* Under the boat law, on giving bond the boat is to be *discharged,* (ib., 103)—but in attachment cases the debtor is allowed to *retain possession.* (ib., 78.)

3d. But if the lien of the process continued after giving bond, yet it was clearly gone after forfeiture and judgment rendered against the sureties. This has been expressly adjudged in attachment cases, on the principle that the lien on the process is merged in the judgment. Luck vs. Ramsey, 3 Munford's R., 117; Malone vs. Abbott, 3 Humphrey's R., 532; 2 Tucker's Com., 365, 366.

IV. The defendants are liable in this action for the seizure of the boat:

1st. As being parties to illegal process. Parsons vs. Loyd, 3 Wilson's R., 341. (ib., 368.)

2nd. Because their head officer expressly commanded the seizure. 1 Cow. R., 513; 4 Cow. R., 645; 9 Page's Chancery R., 496.

V. The defence being a justification under process, was not admissible under the general issue. I Chitty's Plead., 538.

VI. The damages were correctly assessed by the court:

In the first count the payment of the money is expressly alleged as special damages. Besides, on general principles, the measure of damages in trespass, when the property or any part of it has been returned, is the value taken, *minus* the value returned; and in the present case, the value returned was the value taken, *minus* the money paid to obtain the return.

SCOTT, J., *delivered the opinion of the Court.*

It becomes necessary in this case to determine the question whether the bonding of the boat was a discharge of the lien by virtue of which she was seized at the suit of the appellant. But for the giving of the bond, the boat would have been held in the custody of the officer who seized her. While in that situation there would be little or no occasion for contracting debt on her account. When she is freed from arrest and employed in navigation, the want of supplies is daily recurring, and the policy of the law in allowing debts of a certain class to be liens, is subserved by discharging the liens for which a boat has once been seized.— The consideration which influenced the law maker in giving liens for certain debts in marine navigation, influenced our Legislature in allowing liens on boats. Bottomry bonds are evidences of debt contracted by the master in a foreign port for obtaining necessary supplies when the owner has no resources or credit. The lien of the last bottomry bond is preferred to that created by one of a previous date. Steamboats, like sea vessels, "were made to plough the waters and not to rot by the wall," and to effect this end, the laws make them subject to liens. A boat may have contracted debts to a large amount, and after being seized for those debts, to permit her again to be employed in navigation, subject to

their liens, would be the means of deceiving those who might be willing to give her credit, if the fact was unknown, and if known, would disable her from obtaining it.

The condition of a bond given for the purpose of releasing a boat detained for debt, is, that the obligors shall satisfy the amount which shall be adjudged to be owing and due the plaintiff, together with costs. There is nothing said about the return or delivery of the boat. If it was intended that the boat should be sold for the debts for which she had been seized, there would have been a stipulation for returning her to satify the judgment of the court. When a boat is not bonded, judgment is given that she be sold to satisfy the debt for which she was seized; if she is still liable to be sold after being bonded, should not the same judgment be rendered, notwithstanding the liabilities of the sureties? The case of Evans vs. King, 7 Mo. R., 411, in which it was held that the giving of a bond for the forthcoming of property seized under an attachment, is not a discharge of the lien created by a levy of the attachment, is not an authority in support of the position that the giving of the bond under the act concerning boats and vessels, is not a discharge of the lien on the boat. The principal ground of the decision in the case of Evans vs. King, was, that a mode was prescribed by the law regulating attachments, for their dissolution, and the manner of effecting this, being expressly pointed out, it would be unwarrantable to infer that effect from a bond under another provision of the law devised for another purpose.

If the liens were discharged, the judment which condemned the boat to be sold was erroneous, and the appellant stands in the position of one whose debt has been paid by the property of another. Under such circumstances, an action for money had and received would lie to recover the amount received. This, action however, is, in form, trespass.— We cannot perceive the principle on which a party to the record can be made liable in trespass for an erroneous judgment or award of execution emanating from a court of record having jurisdiction of the subject matter. This is not the case of taking the property of one to satify the execution of another. The identical property sold in this case, was condemned by the court to sale, and process issued for the purpose. The owner of the boat being no party to the proceeding, he could not reverse the judgment on appeal or writ of error. He might, no doubt, have, by application to the court, arrested the execution of the process. By the parties to the record only, an erroneous judgment may be reversed.— Irregular process of a court of general jurisdiction, will justify an officer

or party, until it is set aside on motion. Barker vs. Braham & Norwood, 3 Wilson, 368.

The action is, in form, trespass, and not guilty is the only plea in the case. The justification was not admissible under that plea. The judgment therefore must be affirmed. This course is calculated to do justice between the parties. The plaintiff is entitled to recover the value of his property sold, and as the objection to his recovery is the misconception of the form of his remedy, there is no hardship in holding the defendant to a strict compliance with the forms of pleading.

The other Judges concurring, the judgment will be affirmed.